Milton Springut (MS6571)
Tal S. Benschar (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
(212) 813-1600

*Attorneys for Plaintiffs*
*Cartier, a division of Richemont North America, Inc.*
*and Cartier International, N.V.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
CARTIER, division of RICHEMONT  :
NORTH AMERICA, INC.; and        :
CARTIER INTERNATIONAL, N.V.,    :   Civil Action
                                :
         Plaintiffs,            :   No.
   v.                           :
                                :
SEAH LLC; SKYMALL, INC.; and    :   **COMPLAINT**
JOHN DOES 1-10,                 :
                                :
         Defendants.            :
---------------------------------------------------x

Plaintiffs, complaining of Defendants, hereby allege as follows:

## THE PARTIES

1.   Plaintiff Cartier, division of Richemont North America, Inc., is a Delaware corporation, having its executive offices and place of business at 653 Fifth Avenue, New York, New York 10022 ("Cartier NA").

2.   Plaintiff Cartier International, N.V., is a Netherlands Antilles corporation, having its principal office and place of business at Scharlooweg 33, Curaçao, the Netherlands Antilles ("Cartier International"). For purposes of this Complaint, except where specified, the plaintiffs'

interests herein are as a practical matter identical and they are referred to collectively and interchangeably as "Cartier."

3.      Defendant Seah LLC, upon information and belief, is a limited liability company organized under the laws of the State of Florida, having a place of business at 14051 Northwest Fourteenth Street, Sunrise, Florida 33323 (hereinafter "Seah").  Defendant Seah is transacting and doing business in this judicial district and is subject to the jurisdiction of this Court.

4.      Defendant Skymall, Inc. is a Delaware corporation having its principal place of business at 1520 East Pima Street, Phoenix, Arizona 85034 (hereinafter "Skymall").  Defendant Skymall is transacting and doing business in this judicial district and is subject to the jurisdiction of this Court.

5.      Upon information and belief, defendants John Does 1-5 are individuals who are officers or other managing agents of one or more of the defendants named above and are conscious dominant and active forces behind the wrongful acts of one or more of the defendants named above and complained of herein, which wrongful acts they have engaged in for the benefit of one or more of the named defendants above and for their own individual gain and benefit.  Defendants John Does 1-5 are transacting and doing business in this judicial district and are subject to the personal jurisdiction of this Court.

6.      Upon information and belief, defendants John Does 6 to 10 are persons or entities who supplied the infringing goods alleged herein to the other defendants herein.  Defendants John Does 6-10 are transacting and doing business in this judicial district and are subject to the personal jurisdiction of this Court.

7. For the purposes of this Complaint, all of the above defendants are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the claims in this action under the Trademark Act of 1946, as amended, for trademark and trade dress infringement pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

9. This Court has supplemental jurisdiction over the claims in this Complaint arising under the common law or statutory law of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. The Court also has jurisdiction over all claims of unfair competition pursuant to 28 U.S.C. § 1338(b).

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

### The CARTIER Brand and Businesses

11. Plaintiffs' origins date to over 150 years ago, when master jeweler Louis Francois Cartier established his jewelry concern in the heart of Paris, and established the CARTIER brand.

12. Cartier created the first women's wristwatch in 1888, and in 1904 the first wristwatch to utilize a leather strap.

13. Over the last century and a half, Cartier's leadership in the field of fine jewelry and watch design has caused the Cartier brand to be regarded as the preeminent global symbol of cosmopolitan fashion and prosperity.

14. For decades, Cartier NA has operated an internationally famous retail store at Fifth Avenue and 52nd Street in New York City. Cartier NA also operates retail shops in many of America's major cities and licenses distributors to sell world-acclaimed Cartier watches and jewelry throughout the United States in fine stores.

15. Cartier International is the owner of trademarks and trade dress for watches and jewelry sold by Cartier NA or under its auspices, pursuant to licenses from Cartier International to Cartier NA.

16. Cartier NA is the exclusive United States trademark of Cartier International.

17. The watches and jewelry produced pursuant to the foregoing arrangements are variously referred to herein as "Cartier" watches.

18. No defendant in this action has sought nor received a license from Cartier NA or Cartier International for any purpose whatsoever.

## THE CARTIER INTELLECTUAL PROPERTY

### The PASHA DE CARTIER Trade Dress

19. Cartier's PASHA DE CARTIER Watches feature a distinctive and unique combination of elements that collectively create a particular trade dress (the "PASHA DE CARTIER Trade Dress"). The PASHA DE CARTIER Trade Dress consists of a collocation of design elements. The combination of all or almost all such elements together give the watches a

distinct overall look and commercial impression. Although these elements cannot be perfectly described in words, the following describes the elements of the PASHA DE CARTIER Trade Dress:

a) The watch case is round and is thick (*i.e.*, deep) as compared to most watches, with a thick outer metal bezel surrounding the watch face. The bezel is beveled such that it slopes downward from the inside of the case to the outside.

b) A distinctively shaped removable screw down cap covers a central crown. When viewed from the front of the watch, the shape of the cap, from left to right, is as follows: (1) a first thin metal ring, (2) a second thin metal ring of larger diameter, (3) a third thick metal ring of still larger diameter with engraved striations about the entire ring, (4) a fourth thick, smooth metal ring of smaller diameter than the third ring and tapering to a narrow diameter, and (5) a cabochon (rounded) end, consisting of sapphire, diamond or colored stone or a rounded stainless-steel dome. The cap is attached to the watch case with a chain link.

c) The watch case has single "horned" extensions at the top and bottom thereof for connection to a strap or bracelet. Unlike most watches, that have two extensions on both the top and bottom such that a strap fits between the extensions, there is only a single extension on each side, and the strap or bracelet fits around the single extension.

d)  A lug fits through the strap/bracelet and the single horned extension and is capped on both sides by distinctive cut-pyramid shapes.

e)  The watch face has large, prominent Arabic numerals with a distinctive curly font.

f)  On models including a metal bracelet, the bracelet consists of H-shaped links alternating with rectangular shaped links. The width of each of the two legs of the H-shaped link is half that of the rectangular link.

g)  On models including two smaller crowns, the crowns are positioned above and below the central crown, and are capped with non-removable caps, which caps are designed similarly to the main cap and end in matching cabochons.

20.  Figure A (below) are photographs of two variations of the "Pasha de Cartier" watch:

 



Figure A

21. The collocation of features set forth in the above paragraphs constitutes a distinctive trade dress that has secondary meaning. This design has been extensively promoted by Cartier in the United States and has achieved significant sales success. The pubic has come to recognize this design as distinctive of this line of Cartier watches and as an indication of source of such watches.

22. The PASHA DE CARTIER Trade Dress is thus a means by which Cartier is known to the public and the trade as the sole source and origin of PASHA DE CARTIER watches.

**The Pasha de Cartier Registrations**

23. The PASHA DE CARTIER Trade Dress has been registered on the Principal Register of the United States Patent and Trademark Office, Nos. 3,211,038 and 3,211,039 for, respectively, the PASHA DE CARTIER Trade Dress without and with the distinctive bracelet design. Cartier International is the owner of such registrations and the trade dress set forth therein. Such registrations and the trade dress therein are valid and subsisting. (Such registrations are hereinafter referenced as the "PASHA Registrations.")

**The Goodwill and Fame of the Products, Marks and Designs**

24. Cartier has extensively advertised and promoted the trade dress and design set forth above.

25. As set forth above, Cartier has also been an important innovator in watch and jewelry fashion and design.

26. Cartier takes particularly great care and applies the highest level of professional skill in the design and manufacture of its watches and jewelry.

27. Cartier has invested millions of dollars over the years in marketing, promoting and advertising the fine quality of its jewelry and watches, including the trade dress and designs set forth above.

28. As a result of all the foregoing, Cartier has established a worldwide reputation for the uniform high quality of Cartier watches and jewelry sold under or in connection with the trade dress, and design set forth above. As a result, these watches and designs have acquired outstanding renown and invaluable goodwill in the United States and around the world.

**Defendants' Infringing and Unfairly Competitive Activities**

29. Defendants have advertised, offered for sale and have sold watches that infringe the PASHA DE CARTIER Trade Dress, including specifically, without limitation, the "Seah Zodiac" watch collection.

30. Upon information and belief, Defendants, without Cartier's authorization, intentionally and knowingly have manufactured and continue to manufacture or cause others to manufacture imitations of Cartier's watches as set forth above.

31. The watches manufactured by Defendants are of inferior quality to genuine Cartier watches.

32. All the acts complained of herein are still being committed by Defendants, despite written protests by Cartier.

### COUNT I

**REGISTERED TRADE DRESS INFRINGEMENT**
**Section 32 of the Trademark Act, 15 U.S.C. § 1114(1)**

33. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

34. Defendants have actual or constructive knowledge of the existence of the PASHA Registrations identified herein.

35. Defendants have offered for sale and, upon information and belief, sold and distributed watches, as identified hereinabove, bearing a design confusingly similar to the trade dress set forth in the PASHA Registrations, which creates a likelihood of confusion such that the purchasing public is likely to believe that Defendants' watches are authentic Cartier PASHA DE CARTIER watches or are in some manner sponsored, approved or authorized by, or otherwise connected with Cartier.

36. Defendants' actions constitute willful and deliberate infringement of Cartier's PASHA Registration in violation of § 32 of the Trademark Act, 15 U.S.C. § 1114.

37. The actions and conduct of Defendants have damaged Cartier and will, unless restrained, further impair, if not destroy, the value of Cartier's PASHA Registrations and PASHA DE CARTIER Trade Dress and the goodwill associated with them, for which Cartier has no adequate remedy at law.

38. Defendants' trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

39. Defendants' trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

## COUNT II

### TRADE DRESS INFRINGEMENT
Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a)

40. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

41. The actions of Defendants described hereinabove constitute false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a).

42. Defendants' trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

43. Defendants' trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

## COUNT III

### TRADE DRESS INFRINGEMENT
### New York Common Law

44. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

45. Defendants' actions constitute trade dress infringement and unfair competition in violation of New York common law.

46. Defendants' trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

47. Defendants' trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray:

1. That Defendants, their officers, agents, servants, employees and attorneys, and those in active concert or participation with it or any of them, be permanently enjoined and restrained:

    (a) from using in any manner the PASHA DE CARTIER Trade Dress, alone or in combination with any other words or designs, in manner likely to cause confusion, deception, or mistake on or in connection with advertising, offering for sale or sale of any goods not manufactured by Cartier, or not authorized by Cartier to be sold in connection with their respective said marks; and

    (b) from otherwise competing unfairly with Plaintiffs in any manner.

2. That Defendants be required to deliver up to Plaintiffs for destruction, any and all goods in their possession or under their control that were or are being advertised, promoted, offered for sale or sold in connection with the PASHA DE CARTIER Trade Dress, whether alone or in combination with any words or designs.

3. That Defendants be required to deliver up to Plaintiffs for destruction, any and all catalogs, circulars and other printed material in their possession or under their control displaying or promoting the goods that were or are being advertising, promoted, offered for sale or sold in connection with the PASHA DE CARTIER Trade Dress, whether alone or in combination with any words or designs.

4. That Defendants be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for

herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with permanent injunction.

5. That Defendants be required, pursuant to 15 U.S.C. § 1117, to account to Plaintiffs for any and all profits derived by them, and for all damages sustained by Plaintiffs by reason of Defendants' actions complained of herein, including an award of treble damages as provided for statute.

6. That Plaintiffs be awarded punitive damages.

7. That Plaintiffs be awarded both pre-judgment and post-judgment interest on each and every damage award.

8. That pursuant to 15 U.S.C. § 1117, Plaintiffs have and recover from Defendants, Plaintiffs' reasonable attorneys' fees, costs and disbursements of this civil action.

9. That Plaintiffs have such other and further relief as the Court may deem just and proper.

KALOW & SPRINGUT LLP

Dated: May 12, 2008

By: _____
Milton Springut (MS6571)
Tal S. Benschar (TSB0838)

*Attorneys for Plaintiffs*
*Cartier, a division of Richemont North*
*America, Inc., and Cartier International,*
*N.V.*