174361.1

Milton Springut (MS6571)
Tal S. Benschar (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
(212) 813-1600

*Attorneys for Plaintiffs*
*Cartier, a division of Richemont North America, Inc.*
*and Cartier International, N.V.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
CARTIER, division of RICHEMONT           :
NORTH AMERICA, INC.; and                 :
CARTIER INTERNATIONAL, N.V.,             :
                                         :
                       Plaintiffs,       :     Civil Action No. 08-CV-4471 (LAK)
       v.                                :
                                         :
SEAH LLC; SKYMALL, INC.; and             :
JOHN DOES 1-10,                          :
                                         :
                       Defendants.       :
-------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR EXPEDITED DISCOVERY**

TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND AND STATEMENT OF FACTS .................................................. 2

    A.    The Parties .................................................................. 2

    B.    Cartier Watches and the PASHA Registration ............................ 3

    C.    Defendants' Activities and Cartier's Investigation ........................ 3

ARGUMENT

THE COURT SHOULD GRANT
CARTIER EXPEDITED DISCOVERY ..................................................... 4

    A.    Standards For Expedited Discovery ..................................... 4

    B.    Cartier's Application Meets The *Notaro* Standard ........................ 6

        1.    Irreparable Harm ................................................. 6

        2.    Some Probability Of Success On The Merits ....................... 6

            a.    Cartier's Trade Dress Is Distinctive And Non-Functional ....... 7

            b.    Likelihood of Confusion ............................... 7

        3.    Connection Between Discovery and Avoidance
            of Irreparable Harm .............................................. 8

        4.    Balance of Harms ................................................ 9

    C.    Cartier Meets The Good Cause Standard ................................ 9

CONCLUSION ......................................................................... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ayyash v. Bank Al-Madina,*
233 F.R.D. 325 (S.D.N.Y. 2005) ................................................. 5, 9

*Benham Jewelry Corp. v Aron Basha Corp.,*
1997 WL 639037, 20 (S.D.N.Y. 1991) ............................................ 4

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,*
2003 U.S. Dist. LEXIS 7844 (S.D.N.Y. May 8, 2003) ............................. 2, 7

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,*
348 F. Supp. 2d 217 (S.D.N.Y. 2004) ....................................... 2, 3, 7, 8

*Empresa Cubana Del Tabaco v. Culbro Corp.,*
2004 WL 925615, 3 (S.D.N.Y. 2004) ............................................. 6

*Hermes International v. Lederer de Paris Fifth Avenue,*
219 F.3d 104 (2d Cir. 2000) ................................................... 7, 8

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,*
192 F.2d 337 (2d Cir. 1999) ...................................................... 7

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,*
799 F.2d 867 (2d Cir. 1986) ...................................................... 7

*McGraw Hill Cos., Inc. v. Ingenium Technologies Corp.,*
364 F. Supp. 2d 352 (S.D.N.Y. 2005) ............................................. 6

*Nora Beverages, Inc. v. Perrier Group of America, Inc.,*
164 F.2d 736 (2d Cir. 1998) ...................................................... 8

*Notaro v. Koch,*
95 F.R.D. 403 (S.D.N.Y. 1982) ............................................ 4, 5, 6, 9

*Omega Importing Corp. v. Petri-Kine Camera Co.,*
451 F.2d 1190 (2d Cir. 1971) ..................................................... 6

*Optician Ass'n. of America v. Independent Opticians of America,*
920 F.2d 187, 196 (3d Cir. 1990)) ................................................ 6

*Publications Intern., Ltd. v. Landoll, Inc.,*
164 F.3d 337 (7th Cir. 1998), *cert. denied*, 526 U.S. 1088 (1999) ................. 1

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.,*
749 F. Supp. 473 (S.D.N.Y. 1990) ................................................ 4

*Yurman Design, Inc. v. Paj, Inc.*,
262 F.3d 101 (2d Cir. 2001) .................................................... 7

## FEDERAL STATUTES & RULES

15 U.S.C. § 1115(a) ........................................................... 7

Fed.R.Civ.P. 30(a)(2)(c) ...................................................... 4

Fed.R.Civ.P. 34(b) ........................................................... 4

## OTHER AUTHORITIES

Fed.R.Civ.P. 26(d) Advisory Committee Notes, 1993 Amendments ................. 4

174361.1

Plaintiffs, Cartier, division of Richemont North America, Inc. and Cartier International (collectively "Cartier"), hereby move for expedited discovery as to defendants Seah LLC and SkyMall, Inc. (collectively "Defendants").

**PRELIMINARY STATEMENT**




Cartier PASHA                              SEAH Zodiac

"In intellectual property cases, a picture, or, better, the very object claimed to infringe, is worth a thousand words of brief." *Publications Intern., Ltd. v. Landoll, Inc.,* 164 F.3d 337, 343 (7th Cir. 1998), *cert. denied*, 526 U.S. 1088 (1999).

This case involves the sale of look-alike watches that infringe a famous and successful Cartier watch design. Defendants have advertised, offered for sale and sold watches infringing

the PASHA DE CARTIER Trade Dress – a trade dress that has been upheld as valid and enforceable by prior decisions of Courts in this district, *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 U.S. Dist. LEXIS 7844 (S.D.N.Y. May 8, 2003); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y. 2004) and has since been registered in the United States Patent and Trademark Office.

Cartier seeks expedited discovery so that it can identify all of the persons and entities involved in the manufacture and commercial distribution of such infringements and thereby allow it to take legal action against such parties in the appropriate forum. Cartier also seeks such discovery so it can prepare for a possible preliminary injunction motion in this action, should that prove necessary.

## BACKGROUND AND STATEMENT OF FACTS

### A.    The Parties

Cartier's origins go back over one hundred and fifty years. Cartier has been marketing high-end watches in the United States for nearly a century, and in that time has developed a reputation for high quality, style and design of its watches and other jewelry products.

Plaintiff Cartier International, N.V., a Netherlands Antilles corporation, is the owner of all trademarks used in the marketing of Cartier watches and jewelry designs, including the registered trade dress at issue herein. These rights are licensed to co-plaintiff, Cartier, division of Richemont N.A., Inc., a Delaware corporation, which operates Cartier stores throughout North America and supplies wholesale accounts with Cartier watches and jewelry. (Benschar 2-3)[1]

Defendant Seah LLC ("Seah"), is a Florida limited liability company that has a place of

---

[1] The declaration of Tal Benschar, Esq. will be referenced by the declarant's surname followed by the cited paragraph number, *e.g.*, "Benschar 2" references Benschar Declaration, ¶ 2.

2

business in Sunrise, Florida.  Defendant SkyMall, Inc. (SkyMall), is a Delaware corporation having a place of business in Phoenix, Arizona.  Defendants have advertised, offered for sale and have sold infringing products through the SkyMall Magazine, distributed on airplanes throughout the United States, and the websites *www.seachzodiacwatches.com* and *www.skymall.com.*

### B.   Cartier Watches and the PASHA Registration

Cartier manufactures and sells a line of watches referred to as PASHA DE CARTIER watches.  Introduced in 1985, this line of watches is one of the most well known models in Cartier's line of watches, and has a distinct product design well known in the watch industry and among the public that buys luxury watches.  *See Four Star*, 348 F.Supp.2d at 223 (summarizing Pasha Trade Dress elements).   The PASHA DE CARTIER Trade Dress is registered on the Principal Register of the United States Patent and Trademark Office.  (Benschar Exhs. A and B)

### C.   Defendants' Activities and Cartier's Investigation

Defendants offered for sale in their magazine and on their websites watches, infringing on the PASHA Registration.  (Benschar 6-8; Exhibits C and D)  An assistant at the office of Cartier's counsel ordered a watch from Defendants and it was shipped to his New York address, hereinafter the "Sample Watch."  (Benschar 8 and Exh. D)  The first page of this memorandum of law compares one of the variation of Defendants' advertised infringing watches (Benschar Exh. C) with a Cartier Pasha watch.

Cartier now seeks expedited discovery to identify all of the actors in the supply chain of the infringing goods.  This discovery will allow Cartier to pursue these parties and put a stop to any infringing activities.  Cartier also seeks the expedited discovery to prepare for a possible

3

motion for preliminary injunction in this action, should that be determined to be appropriate.

## ARGUMENT

## THE COURT SHOULD GRANT
## CARTIER EXPEDITED DISCOVERY

A.      **Standards For Expedited Discovery**

Expedited discovery is often ordered in cases raising allegations of infringement or unfair competition to permit the plaintiff to assess the extent of infringement. *Benham Jewelry Corp. v Aron Basha Corp.*, 1997 WL 639037, *20 (S.D.N.Y. 1991) ("such [expedited] discovery is routinely granted in actions involving infringement and unfair competition.") It is also appropriate to grant same in preparation for a motion for a preliminary injunction. *See* Advisory Committee Notes, 1993 Amendments, to Rule 26(d), Fed.R.Civ.P.

Rule 30(a)(2)(C), Fed. R. Civ. P., empowers the court to allow for depositions to be taken before the time specified in Rule 26(d); Rule 34(b) provides that a court may require a defendant to produce documents pursuant to a Rule 34 request in less time than is specified therein. *See, generally, Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

Courts have adopted different standards for determining whether to grant such a motion. Older cases required satisfaction of a four-part test similar to that for a preliminary injunction. *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). The *Notaro* decision had required satisfaction of a four-part test:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited

4

discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro.*, 95 F.R.D. at 405.

More recent cases have adopted a flexible "good cause" standard, which simply examines the requested discovery in light of the entire record to determine whether the moving party has set forth a reasonable basis for ordering expedited discovery. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005). The *Ayyash* court, we submit, convincingly rejected the rigid test adopted in *Notaro*:

> [M]any recent cases reject *Notaro* and apply a more flexible "good cause" test. [citations omitted] These latter cases seem to have the better of the argument. As the [Federal] Rules permit the Court to act by order, but do not elaborate on the basis for taking action, it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test. As one court has pointed out, the *Notaro* test is similar to the analysis necessary to justify the far more dramatic decision to grant a preliminary injunction, and employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing. [citation omitted] Rather, in deciding on a matter merely of regulating the timing of discovery, "it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." [citation omitted]
>
> Accordingly, this Court will assess the application under the flexible standard of reasonableness and good cause . . .

*Ayyash v. Bank Al-Madina*, 233 F.R.D. at 326-27. Cartier submits that the more flexible *Ayyash* is the correct test. In any event, under either test, Cartier has demonstrated a need for expedited discovery.

5

### B.     Cartier's Application Meets The *Notaro* Standard

Cartier's instant application easily meets the *Notaro* standard. Expedited discovery will permit Cartier to identify other actors in the supply chain for infringing goods and put a stop to infringement of its trade dress by such other parties. It will also afford Cartier information that can be used to stop infringement in other ways, should that be necessary.

#### 1.     Irreparable Harm

It is well established that trademark infringement is presumed to cause irreparable harm to the trademark owner because consumer confusion and the resulting damage to reputation are difficult to measure. *E.g., Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971); *McGraw Hill Cos., Inc. v. Ingenium Techs. Corp.,* 364 F.Supp.2d 352, 355 (S.D.N.Y. 2005). "[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the actions of another." *Empresa Cubana Del Tabaco v. Culbro Corp.,* 2004 WL 925615, *3 (S.D.N.Y. 2004) (*quoting Optician Ass'n. of America v. Independent Opticians of America,* 920 F.2d 187, 196 (3d Cir. 1990)).

As discussed *infra,* Defendants' "Seah Zodiac" Watches are confusingly similar to the Pasha de Cartier Trade Dress. The reputational harm caused by sales of such watches to Cartier is irreparable.

#### 2.     Some Probability Of Success On The Merits

In order to prevail in an action for trade dress infringement of a product design a plaintiff must demonstrate that: (1) the plaintiff's trade dress is "distinctive" as to the source of its goods,

6

having acquired secondary meaning; (2) there is likelihood of confusion between the defendant's trade dress and the plaintiff's trade dress as to origin, sponsorship, or approval of the defendant's goods; and (3) the matter sought to be protected is not functional. *Yurman Design, Inc. v. Paj, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001). Cartier has a strong case on each element:

### a. Cartier's Trade Dress Is Distinctive And Non-Functional

As noted above, the Court in *Four Star* twice held that the Pasha Trade Dress was both distinctive – *i.e.*, it had acquired "secondary meaning" and non-functional. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 U.S. Dist. LEXIS 7844 (S.D.N.Y. May 8, 2003); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y. 2004). Further, the design has since been registered on the principal register of the Trademark Office. (Benschar Exhs. A and B) Such registration is prima facie evidence of both the ownership and validity of the mark therein. 15 U.S.C. § 1115(a); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.2d 337, 345 (2d Cir. 1999).

### b. Likelihood of Confusion

The Lanham Act recognizes several different types of actionable confusion; the type that presents the greatest danger in this case is post-sale confusion. Post-sale confusion has been repeatedly recognized in this Circuit. *See Hermes Intl. v. Lederer de Paris Fifth Avenue*, 219 F.3d 104, 108 (2d Cir. 2000); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872-74 (2d Cir. 1986). The harm from post-sale confusion is two-fold. First, an observer of the defendant's product who is confused into believing that the product is that of the plaintiff may be negatively affected in future buying decisions. *See Lois Sportswear*, 799 F.2d at 872-74.

7

Second, post-sale confusion can result in a cheapening of the plaintiff's brand image and a loss of exclusivity. "[P]ost-sale confusion can occur when a manufacturer of knockoff goods offers consumers a cheap knockoff copy of the original manufacturer's more expensive product, thus allowing a buyer to acquire the prestige of owning what appears to be the more expensive product." *Hermes Intl. v. Lederer de Paris Fifth Avenue*, 219 F.3d 104, 108 (2d Cir. 2000). "[A] loss occurs when a sophisticated buyer purchases a knockoff and passes it off to the public as the genuine article, thereby confusing the viewing public and achieving the status of owning the genuine article at a knockoff price." *Id.* at 109.

In analyzing likelihood of confusion in trade dress cases, this Circuit considers the eight well-known *Polaroid* factors, namely

> (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap'...; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.2d 736, 745 (2d Cir. 1998).

Without a complete record, it is difficult to engage in a thorough analysis of these factors. Nevertheless, it is clear that Defendants sell watches which look very similar to Cartier's distinctive look (*see* comparison on page 1, *supra*) – a look which is "instantly recognizable" among the relevant purchasing public. *See Four Star*, 348 F.Supp.2d at 245. In the post-sale context – where the watches are viewed on the wearer's wrist without Defendants' identifying advertisements – Cartier submits that the likelihood of confusion is manifest.

### 3. Connection Between Discovery and Avoidance of Irreparable Harm

The discovery requested (*see* Order to Show Cause, Schedule A) will permit Cartier to identify all the involved actors, take whatever efforts necessary to prevent further acts of

8

infringement and, if appropriate, bring a motion for a preliminary injunction in this action. All of these will aid in minimizing the irreparable harm to Cartier.

### 4. Balance of Harms

The balance of harms favors Cartier. Its reputation is being imperiled by the creation and sale of watches infringing Cartier's Trade Dress. Defendants, on the other hand, are only asked to provide relevant discovery – which they would in any event be obligated to provide eventually under the federal rules – albeit at an earlier time.

### C. Cartier Meets The Good Cause Standard

Since Cartier has met the more stringent *Notaro* standard, it has *a fortiori* met the more liberal good-cause standard adopted in *Ayyash*. Past experience indicates that there may well be several other parties selling watches that infringe upon the PASHA Registration, all to the irreparable harm of Cartier and its goodwill. Stopping such violations of the Lanham Act surely constitutes "good cause" for expedited discovery. The discovery requests set forth in the proposed Order to Show Cause, Schedule A, are under the circumstances, limited and reasonable.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for expedited discovery should be granted.

Respectfully submitted,
KALOW & SPRINGUT LLP
Attorneys for Plaintiffs

Dated: May 20, 2008

By: _____
Milton Springut (MS6571)
Tal S. Benschar (TSB0838)

9