Richard E. Weltman (RW3169)
WELTMAN & MOSKOWITZ, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016
212.684.7800
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

-and-

David L. Ferguson (DF8500)
Jonathan M. Streisfeld (JS5750)
THE KOPELOWITZ OSTROW FIRM, P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
954.525.4100
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

CARTIER, division of RICHEMONT    :
NORTH AMERICA, INC. and
CARTIER INTERNTAIONAL, N.V.,    :    Civil Action No. 08-CV-4471(LAK)

                Plaintiffs,    :

    -against-    :

SEAH LLC; SKYMALL, INC. and    :
JOHN DOES 1-10,

              Defendants.    :

-------------------------------------------------------------------x

## MOTION BY DEFENDANT SEAH, LLC
## TO DISMISS AND TO TRANSFER VENUE

Defendant Seah, LLC, by and through its undersigned counsel, hereby moves the Court, upon the Declaration of Rachel Levy, dated June 4, 2008, the Declaration of Christine Aguilera, dated June 5, 2008, and the Exhibits attached to each declaration, and the Memorandum of Law dated June 5, 2008, submitted therewith ("Motion"), and the summons and complaint herein, for an order dismissing the summons and complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or to transfer the venue pursuant to 28 U.S.C. §1404(a), because:

1.     Defendant is not subject to the personal jurisdiction of this Court; and

2.      Venue is not proper in this Court pursuant to 28 U.S.C. §1391(b); and

3.      Alternatively, assuming venue is proper, the convenience of witnesses and the parties, and the interests of justice, would be better served if this action was transferred to a different judicial district pursuant to 28 U.S.C. §1404(a).

The Court will notify the parties regarding the hearing date and will advise the parties if oral argument will be required.

Respectfully submitted,

**WELTMAN & MOSKOWITZ, LLP**

By:_____
            Richard E. Weltman (RW3169)
            270 Madison Avenue Suite 1400
            New York, New York 10016
            212.684.7800

**THE KOPELOWITZ OSTROW FIRM, P.A.**
            David L. Ferguson (DF8500)
            Jonathan M. Streisfeld (JS5750)
            200 S.W. 1st Avenue, 12th Floor
            Fort Lauderdale, Florida 33301
            Telephone: (954) 525-4100

*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

Dated June 5, 2008

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was served via U.S. Mail and CM/ECF filing on June 5, 2008, to: Tal S. Benschar, Esq. and Milton Springut, Esq., Kalow & Springut, LLP, 488 Madison Avenue, New York, New York 10022.

_____
            Richard E. Weltman (RW3169)

Richard E. Weltman (RW3169)
WELTMAN & MOSKOWITZ, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016
212.684.7800
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

-and-

David L. Ferguson (DF8500)
Jonathan M. Streisfeld (JS5750)
THE KOPELOWITZ OSTROW FIRM, P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
954.525.4100
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CARTIER, division of RICHEMONT          :
NORTH AMERICA, INC.; and
CARTIER INTERNTAIONAL, N.V.,            :     Civil Action No. 08-CV-4471(LAK)

                       Plaintiffs,           :

      -against-                     :

SEAH LLC; SKYMALL, INC.; and           :
JOHN DOES 1-10,
                                :
                      Defendants.

-------------------------------------------------------------------x

## DECLARATION OF RACHEL LEVY

     RACHEL LEVY, state and declare the following facts:

     1.    I am a Managing Member of Defendant, SEAH, LLC, and I have personal knowledge of the facts and circumstances surrounding this matter and stated herein.

     2.    SEAH, LLC is a Florida limited liability company with its principal and sole place of business located in Sunrise, Broward County, Florida.    SEAH, LLC is registered to do business in Florida and has no other offices other than its main address identified above.

3.     SEAH, LLC was formed on or about October 7, 2005. SEAH, LLC's sole business and purpose consists of development, manufacturing and marketing of the Seah Zodiac watch (its only watch line), which is the subject of this lawsuit. SEAH, LLC began selling the Seah Zodiac in April 2008 in the SKYMALL, INC. Magazine and SKYMALL, INC.'s online website.

4.     Since its formation, SEAH, LLC has never transacted nor done business in New York. SEAH, LLC has never solicited any of its products in New York, provided any services in New York, or owned, operated or had any affiliation with any stores or businesses anywhere in New York. SEAH, LLC has never owned or leased any real property in New York, paid any taxes in New York, employed any employees or agents in New York (beyond local counsel in this case), or been incorporated or had any offices outside the State of Florida. Lastly, SEAH, LLC has never performed or entered into any contracts in New York, or maintained any bank accounts in New York.

5.     All of SEAH, LLC's documentation and records pertaining to the design, development, manufacturing, sale or offers for sale of the Seah Zodiac watch at issue are all located at SEAH, LLC's principal and sole place of business in Sunrise, Florida. Additionally, SEAH, LLC's two employees and witnesses, Rachel Levy and Jessica Flores, reside in Broward County, Florida. SEAH, LLC's other witnesses will include its website designer and printer, Bob Tonda of CorporateGraphix, located in Coral Gables, Florida, and Schinah Jane Sezak and John Davidson, who helped design the SEAH booklet and zodiac signs used on its product, both of which are located in Hawaii.

6.     On or about April 1, 2008, SEAH, LLC began marketing its product with SKYMALL, INC. pursuant to a Vendor Agreement, where SKYMALL, INC. agreed to provide

SEAH, LLC with a three-month advertisement in its magazine, and a six-month advertisement on SKYMALL, INC.'s online website. SKYMALL, INC.'s only involvement is to publish an advertisement for the Seah Zodiac in its magazine and on its website, take an order from a customer and subsequently forward payment to SEAH, LLC. SKYMALL, INC. also communicates with the customer by sending a written acknowledgement of the sale and confirmation concerning shipment.

7. SEAH, LLC is marketing the Seah Zodiac watch with focus on "Sun Sign Astrology" with emphasis on the Signs of the Zodiac. Each Seah Zodiac watch and its packaging are conspicuously branded in multiple locations with the SEAH name, along with the Zodiac Sign chosen by the customer prominently displayed on the face, side of the watch casing, on the back of the watch, and on the watch bracelet. Each watch can be purchased in a variety of colors and materials, but each watch has its own unique and distinct appearance.

8. SKYMALL, INC. is the only distributor of the Seah Zodiac in the United States. SKYMALL, INC. does not ship the product to any customer when ordered from its website or magazine. Shipment of the product comes from SEAH, LLC's headquarters in Broward County, Florida.

9. SEAH, LLC has engaged Florida and New York litigation counsel on behalf of SKYMALL, INC. pursuant to the obligations set forth in the Vendor Agreement between SEAH, LLC and SKYMALL, INC., which requires that SEAH, LLC defend, indemnify and hold SKYMALL, INC. harmless for the claims asserted in the Complaint.

10. On May 1, 2008, SEAH, LLC's website (www.seahwatches.com) became live and operational; however, SEAH, LLC has never processed any sale of the Seah Zodiac through its website.

3

11.    Since it began selling its watches on April 1, 2008, SEAH, LLC has sold a total of twenty (20) Seah Zodiac watches, and twenty-four (24) watches were given to friends and family.  SEAH, LLC has manufactured a total of 480 watches.  As a result of the gifts and nominal sales, 436 Seah Zodiac watches remain in stock today.

12.    Of the twenty (20) Seah Zodiac watches sold to the public: (a) six (6) orders for a total seven (7) watches were made and completed through SKYMALL, INC. from April 10, 2008 to May 30, 2008; (b) twelve (12) watches were sold to a distributor located in Dubai directly by SEAH, LLC representatives located in Florida; and (c) one (1) watch was sold to a customer in Puerto Rico by SEAH, LLC representatives located in Florida.  None of the watches given to family and friends were destined for New York.

13.    One of the six completed orders made via SKYMALL, INC. was purchased by an individual named Ryan Francis, which was shipped on April 24, 2008 via FEDEX from SEAH, LLC's headquarters in Florida to New York.   The watch was specifically shipped to Ryan Francis, 279 W. 117th Street, Apt. 6H, New York, New York, 1026. A true and accurate copy of the Order Detail Sheet is attached hereto as Exhibit "A." The transaction was initiated by Ryan Francis, not by SEAH, LLC or SKYMALL, INC.

14.    SEAH, LLC later discovered on May 6, 2008 that Ryan Francis is in fact an employee of the law firm representing Cartier in this matter.   On that date SEAH, LLC received a FEDEX envelope containing a cease and desist letter concerning this matter.  The envelope was addressed from Ryan Francis bearing the address and name of counsel for Cartier - Kalow & Springut LLP, at 488 Madison Avenue, 19th Floor, New York, NY 10022.   A true and accurate copy of the FEDEX shipping label is attached hereto as Exhibit "B."

4

15.     Absent the one sale to Ryan Francis of Kalow & Springut LLP in New York,

SEAH, LLC has never sold or shipped a Seah Zodiac watch to the State of New York.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on June 4th, 2008
Fort Lauderdale, Florida

RACHEL LEVY, Managing Member
of SEAH, LLC

5

# EXHIBIT "A"

# ORDER DETAIL SHEET

Vendor Name: SEAH Watches  
Vendor Code: SWL

Order Create Date: 04/22/2008  
Order Number: 12856450  
Expedite Order: Yes

**Customer Bill To:**

RYAN FRANCIS  
279 W. 117TH ST.  
APT. 6H  
NEW YORK, NY 10026  
Country: US  
Phone: 6462519815

**Customer Ship To:**

RYAN FRANCIS  
279 W. 117TH ST.  
APT. 6H  
NEW YORK, NY 10026  
Country: US  
Phone: 6462519815  
Requested Ship Method: EXP

| LINE # | ITEM # | DESCRIPTION | QTY | UNIT PRICE | DISCOUNT | EXT PRICE |
|---|---|---|---|---|---|---|
| 1 | YGDBL | Seah Zodiac Watch Gold Blue; shipMethod=EXP; sourceCode=08E;spec=Aries(Zodiac) | 1 | $1,799.00 | $.00 | $1,799.00 |

| | | | | |
|---|---|---|---|---|
| Sales Total: | $1,799.00 | | | |
| Sales Tax: | $154.10 | Total Number of Line Items: | 1 | |
| Shipping & Handling: | $37.90 | Total Number of Units: | 1 | |
| Discounts: | $.00 | Total Number of Units: | 1 | |
| Final Grand Total | $1,991.00 | | | |

```
Ref:                Date: 04/24/2008    SHIPPING:      35.55
Dep:                Wgt: 1.0 LBS        SPECIAL:       16.35
                                        HANDLING:       0.00
                    DV:      1000.00    TOTAL:         51.90
            Svc: STANDARD OVERNIGHT OSR-RES
            FRCM:9651 0896 2329
```

# EXHIBIT "B"



From: Origin ID: RBA  (212)813-1600
Ryan Francis
Kalow&Springut LLP.
488 Madison Avenue
19th Floor
New York, NY 10022

**FedEx**

SHIP TO: 2128131600        BILL SENDER

NA NA
SEAH
14051 NW 14th Street

Sunrise, FL 33323

Ship Date: 05MAY08
ActWgt: 1 LB
System#: 3114/0231NET8010
Account#: S *********

Delivery Address Bar Code

Ref #    Carrier 0001
Invoice #
PO #
Dept #

TRK#
0201      7918 9607 6810

XH ZFTA

TUE - 06MAY    A1
PRIORITY OVERNIGHT

33323
FL-US
FLL

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

Richard E. Weltman (RW3169)
WELTMAN & MOSKOWITZ, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016
212.684.7800
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

-and-

David L. Ferguson (DF8500)
Jonathan M. Streisfeld (JS5750)
THE KOPELOWITZ OSTROW FIRM, P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
954.525.4100
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CARTIER, division of RICHEMONT
NORTH AMERICA, INC.; and
CARTIER INTERNTAIONAL, N.V.,                                     :   Civil Action No. 08-CV-4471(LAK)

                                            Plaintiffs,          :

            -against-                                            :

SEAH LLC; SKYMALL, INC.; and                                    :
JOHN DOES 1-10,
                                                                :
                                            Defendants.

-------------------------------------------------------------x

## DECLARATION OF CHRISTINE AGUILERA

I, CHRISTINE AGUILERA, state and declare the following facts:

1.     I am the President of SKYMALL, INC., and I have personal knowledge of the facts and circumstances surrounding this matter and stated herein.

2.     SKYMALL, INC. is a Delaware Corporation with its principal place of business located in Phoenix, Maricopa County, Arizona. As of the date of the filing of the Complaint and of this Declaration, SKYMALL, INC. has no other offices, but has two employees in Ohio and Minnesota respectively who work from home.

3.     SKYMALL, INC. has no offices in New York. All of the SKYMALL, INC. representatives with personal knowledge of facts pertaining to the business relationship between SKYMALL, INC. and SEAH, LLC, and of the single sale of a Seah Zodiac watch to an individual in New York, work and reside in Phoenix, Arizona.

4.     SKYMALL, INC. negotiated its contractual relationship with SEAH, LLC without any contact with New York.

5.     SKYMALL, INC. is a party to a Vendor Agreement with SEAH, LLC, which became effective on April 1, 2008. SKYMALL, INC. agreed to provide SEAH, LLC with a three-month advertisement in its magazine, and a six-month advertisement on SKYMALL, INC.'s online website. SKYMALL, INC. is contractually obligated is to publish an advertisement for the Seah Zodiac in its magazine and on its website.

6.     SKYMALL, INC. is also contractually obligated to take orders for the Seah Zodiac watches from customers either by telephone or through website orders. Based on the financial terms agreed to in the Vendor Agreement, SKYMALL, INC. subsequently sends payment to SEAH, LLC at its office in Florida. SKYMALL, INC. also communicates with the customer by sending a written acknowledgement of the sale and confirmation concerning shipment when SEAH, LLC notifies SKYMALL, INC. of the shipment.

7.     SEAH, LLC is obligated to ship the product to the customer, upon receipt of customer information that is sent electronically by SKYMALL, INC. from Arizona to Florida. Any returns of the Seah Zodiac watch are to be made directly to SEAH, LLC. SKYMALL, INC. has no inventory of Seah Zodiac watches.

8.     Through May 30, 2008, SKYMALL, INC. has taken 7 orders for Seah Zodiac watches, one of which was for 5 watches, meaning a total of 12 watches purchased through

2

SKYMALL, INC. The customer who purchased 5 watches in a single order returned all 5 of the watches for a refund. One of the watches was purchased by Shimon Levy, the husband of Rachel Levy, the managing member of SEAH, LLC.

9.    One of the orders made via SKYMALL, INC. was purchased by an individual named Ryan Francis on the SKYMALL, INC. website, who provided the following address for shipment of the watch: 279 West 117th Street, Apt. 6H, New York, New York, 10026. A true and accurate copy of the Order Detail Sheet is attached hereto as Exhibit "A."

10.    SKYMALL, INC. is ceasing publishing of any advertisements for any product of SEAH, LLC on SKYMALL, INC.'s website and no print advertising will appear in its future catalogs for the Seah Zodiac, and is no longer accepting any orders on behalf of SEAH, LLC for the sale of the Seah Zodiac.

11.    SKYMALL, INC.'s defense is currently being funded by SEAH, LLC pursuant to the terms of the Vendor Agreement.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5th, 2008

CHRISTINE AGUILERA

3

# EXHIBIT "A"

Printable Manifest                                                                                   Page 1 of 2

# ORDER DETAIL SHEET

Vendor Name: SEAH Watches                          Order Create Date: 04/22/2008
Vendor Code: SWL                                   Order Number: 12856450
                                                   Expedite Order: Yes

| Customer Bill To: | Customer Ship To: |
|---|---|
| RYAN FRANCIS<br>279 W. 117TH ST.<br>APT. 6H<br>NEW YORK, NY 10026<br>Country: US<br>Phone: 6462519815 | RYAN FRANCIS<br>279 W. 117TH ST.<br>APT. 6H<br>NEW YORK, NY 10026<br>Country: US<br>Phone: 6462519815<br>Requested Ship Method: EXP |

| LINE # | ITEM # | DESCRIPTION | QTY | UNIT PRICE | DISCOUNT | EXT PRICE |
|---|---|---|---|---|---|---|
| 1 | YGDBL | Seah Zodiac Watch Gold Blue; shipMethod=EXP; sourceCode=08E;spec=Aries(Zodiac) | 1 | $1,799.00 | $.00 | $1,799.00 |

| | | | |
|---|---|---|---|
| Sales Total: | $1,799.00 | | |
| Sales Tax: | $154.10 | Total Number of Line Items: | 1 |
| Shipping & Handling: | $37.90 | Total Number of Units: | 1 |
| Discounts: | $.00 | Total Number of Units: | 1 |
| Final Grand Total | $1,991.00 | | |

```
Ref:                Date: 04/24/2008    SHIPPING:      35.65
Dep:                Wgt: 1.0 LBS        SPECIAL:       16.35
                                        HANDLING:       0.00
                    QV:      1000.00    TOTAL:         51.80

        Svc: STANDARD OVERNIGHT OSR--RES
             TRCK: 9051 0896 2329
```

Richard E. Weltman (RW3169)
WELTMAN & MOSKOWITZ, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016
212.684.7800
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

-and-

David L. Ferguson (DF8500)
Jonathan M. Streisfeld (JS5750)
THE KOPELOWITZ OSTROW FIRM, P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
954.525.4100
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CARTIER, division of RICHEMONT                    :
NORTH AMERICA, INC.; and
CARTIER INTERNTAIONAL, N.V.,                       :        Civil Action No. 08-CV-4471(LAK)

                                    Plaintiffs,    :

              -against-                            :

SEAH LLC; SKYMALL, INC.; and                      :
JOHN DOES 1-10,
                                                  :
                                    Defendants.

-------------------------------------------------------------x

**DEFENDANT SEAH, LLC'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND
MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................4

PRELIMINARY STATEMENT...........................................................................7

STATEMENT OF FACTS..................................................................................8

ARGUMENT...................................................................................................11

I.  THE COURT SHOULD DISMISS THE COMPLAINT DUE TO THE LACK OF
    PERSONAL JURISDICTION OVER DEFENDANT SEAH, LLC.........................11

    A.  The Court Lacks Personal Jurisdiction Over Seah, LLC Under CPLR
        §301..................................................................................................12

    B.  The Court Lacks Jurisdiction Over Seah, LLC Pursuant To CPLR
        §302..................................................................................................13

        1.  The Court Lacks Jurisdiction Over Seah, LLC Pursuant to
            CPLR 302(a)(1)...........................................................................13

        2.  The Court Lacks Jurisdiction Over SEAH, LLC Pursuant to CPLR
            §§302(a)(2) and 302(a)(3) Because Seah, LLC's One Sale to
            Plaintiffs' Counsel's Employee Was Not A Tortious Act That
            Caused Any Injury to Plaintiffs......................................................16

        3.  Seah, LLC Lacks the Required Minimum Contacts to Satisfy Due
            Process.......................................................................................17

II. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE VENUE IS
    IMPROPER....................................................................................................19

III. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE
     SOUTHERN DISTRICT COURT OF FLORIDA PURSUANT TO 28 U.S.C.
     §1404(a).....................................................................................................20

     A.  Plaintiffs Might Have Brought This Action in the Southern District
         of Florida..........................................................................................21

     B.  The Factors Strongly Favor Transfer to Florida under Section 1404(a)...........22

         1.  Plaintiffs' Choice of a New York Forum is Entitled to
             Extremely Little or No Weight........................................................24

         2.  The Convenience of the Parties, Convenience of the
             Witnesses, Relative Ease of Access to Sources of Proof,

and Interest of Justice All Weigh Heavily in Favor of
Transfer.................................................................................…..…..24

3.    The Remaining Factors Also Weigh in Favor of
Transfer to the Southern District of  Florida...........................…..…..26

CONCLUSION.............................................................…....................27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,*
98 F.3d 25 (2d Cir.1996)..................................................................................14

*American Allsafe Co. v. Scott Young Research, Inc.,*
No. Civ. A.3:96-CV-0977P, 1992 WL 587483 (N.D. Tex. Sept. 15, 1997).......................15

*Albert v. Apex Fitness, Inc.,*
No. 97 CIV. 1151(LAK), 1997 WL 323899 (S.D.N.Y. June 13, 1997)...........................20

*Asahi Metal Indus. Co. v. Superior Court,*
480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)....................................................18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
171 F.3d 779 (2d Cir.1999).......................................................................14,17

*Bensusan Restaurant Corp. v. King,*
126 F.3d 25 (2d Cir. 1997)...............................................................................16

*Berman v. Informix Corp.,*
30 F.Supp.2d 653 (S.D.N.Y. 1998) ...............................................................21, 25

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).................................................17

*Cartier v. D&D Jewelry Imports,*
510 F.Supp.2d 344 (S.D.N.Y. 2007)..........................................................12, 23, 24

*Coker v. Bank of America,*
984 F. Supp. 757 (S.D.N.Y. 1997)...........................................................................24

*Cottman Transmission Systems, Inc. v. Martino,*
36 F.3d 291 (3d Cir.1994)..................................................................................21

*Dan-Dee Int'l, Ltd v. Kmart Corp.,*
No. 99 Civ. 11689 (DC), 2000 WL 1346865 (S.D.N.Y. September 19, 2000).....................25

*Digital Lab Solutions, LLC v. Stickler,*
No. 06 Civ. 6482 (LLS), 2007 WL 700821 at *4 (S.D.N.Y. March 7, 2007).......................17

*Edberg v. Neogen Corp.,*
17 F. Supp. 2d 104 (D. Conn. 1998)........................................................................15

*Figi Graphic, Inc. v. Dollar General Corp.,*
33 F. Supp 2d 1263 (S.D. Cal. 1998)......................................................................15

*First City Nat. Bank and Trust Co. v. Simmons,*
878 F.2d 76 (2d Cir. 1989)..................................................................................21

*Fort Knox Music, Inc. v. Baptiste,*
203 F.3d 193 (2d Cir.2000).................................................................................14

*Frasca v. Yaw,*
787 F. Supp. 327 (E.D.N.Y. 1992)..........................................................................24

*French Transit v. Modern Coupon Sys.,*
858 F.Supp.22 (S.D.N.Y. 1994)................................................................19

*International Shoe Co. v. Washington,*
326 U.S. 310 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)...........................12,18

*IO Group, Inc. v. Pivotal, Inc.,*
No C 03-5286 (MHP), 2004 WL 838164 (N.D. Cal. April 19, 2004)................15

*Kernan v. Kurz-Hastings, Inc.,*
175 F.3d 236 (2d Cir.1999)................................................................11

*Mattel, Inc. v. Anderson,*
No. 04 Civ. 5275RCC, 2005 WL 1690528 (S.D.N.Y. 2005)........................15

*Metropolitan Life Ins. Co. v. Roberston-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996)..........................................................11, 12,17

*Millennium Enter., Inc. v. Millennium Music, LP,*
33 F. Supp. 2d (D. Ore. 1999)............................................................15

*Nieves v. American Airlines,*
700 F.Supp.769 (S.D.N.Y. 1988)........................................................21

*Pearson Education, Inc. v. Shi,*
525 F.Supp.2d 551 (S.D.N.Y. 2007)...................................................17

*Pilates, Inc. v. Pilates Institute, Inc.,*
891 F.Supp. 175 (S.D.N.Y. 1995)...................................................19, 21

*Philip Morris USA Inc. v. Veles Ltd.,*
2007 WL 725412 at *4 (S.D.N.Y. 2007)...............................................14

*Red Bull Associates v. Best Western Intern., Inc.,*
862 F.2d 963 (2d Cir. 1988)............................................................21

*Reliance Ins. Co. v. Six Star, Inc.,*
155 F.Supp.2d 49 (S.D.N.Y. 2001)....................................................21

*Royal Ins. Co. v. United States,*
998 F. Supp. 351 (S.D.N.Y. 1998)....................................................25

*Schechter v. Tauck Tours, Inc.,*
17 F.Supp.2d 255 (S.D.N.Y. 1998)..................................................21, 23

*Stewart Organization, Inc. v. Ricoh Corp.,*
487 U.S. 22 (1988).....................................................................21

*Sunward Electronics, Inc. v. McDonald,*
362 F.3d 17 (2d Cir. 2004)............................................................15

*Totilo v. Herbert,*
No. 07 Civ. 10991 (LAK), 2008 WL 613148 (S.D.N.Y. March 5, 2008)...........21, 23

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
234 F.2d 633 (2d Cir. 1956)............................................................16

*Watchworks, Inc. v. Total Time, Inc.,*
No. 01 C 5711, 2002 WL 424631 (N.D. Ill. March 19, 2002)............................................15

## FEDERAL STATUTES & RULES

28 U.S.C. § 1391(b)........................................................................................19, 20

28 U.S.C. § 1404(a)........................................................................7, 12, 20, 21, 22, 27

Fed.R.Civ.P. 12(b)(2)........................................................................................7,11

Fed.R.Civ.P. 12(b)(3)........................................................................................7

## NEW YORK CASES

*Landoil Res v. Alexander & Alexander Servs., Inc.,*
77 N.Y.2d 28, 28 N.Y.S.2d 739 (1990).............................................................12

*Johnson v. Ward,*
4 N.Y.3d 516, 797 N.Y.S.2d 33 (2005)..............................................................13

*Riblet Products Corp. v. Nagy,*
191 A.D.2d 626, 627 (N.Y.App. Div.2d Dep't 1993)............................................14

## NEW YORK STATUTES & RULES

CPLR § 301..................................................................................................12

CPLR § 302(a)........................................................................................11, 13, 17

CPLR § 302(a)(1)....................................................................................13, 14, 15

CPLR § 302(a)(2)..........................................................................................16

CPLR § 302(a)(3)........................................................................................16, 17

Defendant, Seah, LLC ("Seah") moves to dismiss the Complaint filed by Plaintiffs, Cartier, a division of Richemont North America, Inc., and Cartier International, N.V. (collectively "Plaintiffs" or "Cartier"), pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, moves to transfer this action to the United States District Court in the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

This Court should dismiss the Complaint as to Seah because this Court lacks personal jurisdiction over Seah and because the case has been filed in an improper venue. With the exception of a single sale of a Seah Zodiac watch as part of an investigation conducted by Plaintiff's counsel, the minimal sales of Seah Zodiac watches today occurred outside of New York. Thus, Seah does not have systematic and continuous contact with New York so as to create general jurisdiction. Because the sole sale of the allegedly infringing watch in New York was to an employee of Plaintiff's counsel, there are no sales on which to base specific personal jurisdiction under New York's long-arm statute.

A body of law has developed in this Court that such investigative sales intended to manufacture jurisdiction in a particular district court do not qualify as consumer transactions in trademark infringement cases. For the same reasons, venue is improper in New York since "a substantial part of the events" giving rise to the claim did not occur in this district. Even if the Court were to consider the sale to Cartier as satisfying the long-arm statute, Seah lacks the requisite minimum contacts to satisfy due process requirements. Finding the requisite minimum contacts would be offensive to traditional notions of fair play. Seah is a fledging watch company that could not reasonably be expected to litigate with Cartier in this district over trade dress infringement issues based on a single sale to Cartier's agent in New York.

Alternatively, the Southern District of Florida is a more convenient forum than New York, and the traditional convenience and interest of justice factors weigh heavily in favor of transfer to Florida. There is nothing factually unique about New York insofar as the facts or witnesses pertinent to this case are concerned. In contrast, the witnesses consisting of Seah's principals, employees and potential experts, that are central to this dispute all live and work in the Southern District of Florida, where Seah's business, products and documentation related to the Seah Zodiac are also located.   Further, Cartier's resources are greatly superior to that of Seah, which does not have the resources to litigate in New York (on its own behalf or on behalf of SkyMall - whom it is defending).  Both the equities and legal authority dictate that Seah should not be forced to litigate in New York when there is absolutely no connection to the forum.

## STATEMENT OF FACTS

Seah is a Florida limited liability company with its principal and sole place of business in Sunrise, Florida.  (Rachel Levy Declaration, ¶ 2).  Since the formation of Seah in October of 2005, Seah's sole business has consisted of the development of its only watch line, the Seah Zodiac watch, which is the subject of this lawsuit. (Levy, ¶ 3).  Seah is only registered to do business in Florida and maintains only its one office in Sunrise, Florida.  *Id.*   Seah has two employees, Rachel Levy and Jessica Flores, both of whom reside in Broward County, Florida. (Levy, ¶ 5)

The Seah Zodiac watch focuses on "Sun Sign Astrology" with emphasis on the Signs of the Zodiac.  (Levy, ¶7).   Each Seah Zodiac and its packaging is conspicuously branded in multiple locations with the "SEAH" name, along with the Zodiac Sign chosen by the customer prominently displayed on the face, side of the watch casing, on the back of the watch, and on the watch bracelet.  *Id.*  Each watch can be purchased in a variety of colors and materials, but each

watch has its own unique and distinct appearance.[1]  *Id.*  On May 1, 2008, Seah's website (www.seahwatches.com), which is operated from Florida, became live and operational; however, Seah has never processed any sale of the Seah Zodiac through its website.   (Levy, ¶10).

Seah began selling the Seah Zodiac watch on April 1, 2008 in *SkyMall Magazine*, published by Defendant SKYMALL, INC., and SkyMall's website www.skymall.com. (Levy, ¶¶3, 6).  SkyMall is a Delaware corporation, with its principal place of business in Phoenix, Arizona.  (Aguilera ¶2).  SkyMall is in the business of selling products in its magazines distributed on airplanes, or via its website. (Aguilera ¶5).

SkyMall is the only distributor for Seah in the United States. (Levy, ¶8).   Pursuant to a vendor agreement[2] between Seah and SkyMall, SkyMall's only involvement is to market and advertise the Seah Zodiac on its website and magazine for three to six months, which began on April 1, 2008, take an order from a customer through personnel in Arizona (either by way of its website or magazine order), and subsequently forward payment to Seah in Florida.  (Levy, ¶6;

---

[1] To address the Court's inquiry during the May 28, 2008 hearing on expedited discovery regarding comparisons of the parties' watch lines, other distinguishing design characteristics of the Seah Zodiac are apparent from an examination of the watch on Seah's website (www.seahwatches.com).  Seah Zodiac watch bands each have "wave pattern" etching that Seah does not believe exists on any Cartier Pasha watch band.  The "wave pattern" also appears on the watch bezel.  The second, minute, and hour hands are distinguishable from Cartier's Pasha watch hands and promote the Sun Sign Astrology theme.  This is also true with regard to the sun accents on the hands for the chronograph functions.  The exact placement of diamonds or screw heads on the Seah Zodiac bezel is distinguishable from Cartier's Pasha designs.  Numerous photographs of Cartier's Pasha de Cartier collection of watches appear on the Cartier website (www.cartier.com), and those photographs do not depict Seah's design elements.  In addition, the packaging and booklet materials are distinct from Cartier's packaging of its Pasha watch.

[2] As a result of its obligations under the Vendor Agreement, Seah has engaged counsel in New York and Florida on SkyMall's behalf, and Seah is contractually required to defend, indemnify and hold SkyMall harmless for Cartier's claims in the Complaint. (Levy, ¶9).

Aguilera ¶5-6). SkyMall also sends a written confirmation to the customer acknowledging the sale, and confirming shipment. (Levy, ¶6; Aguilera ¶6). Seah is responsible for shipping the item directly from its headquarters in Florida. (Levy, ¶8; Aguilera ¶7).

Seah has manufactured a total of 480 Zodiac Watches since its inception and a total of 436 remain in its inventory today. (Levy, ¶11). Since April 1, 2008, Seah has only sold a total of twenty watches, and twenty-three watches were given directly to family and friends. *Id.* All but one of the watches were sold or given as a gift to customers located outside the State of New York. (Levy, ¶¶11-12). All items sold were either processed through SkyMall, or from Seah directly, and are shipped directly from Seah's headquarters in Florida. (Levy, ¶¶8, 12).

The one Seah Zodiac watch sold and subsequently shipped to New York was purchased by an individual named Ryan Francis through SkyMall. (Levy, ¶¶13-14; Aguilera ¶9). Specifically, the item was shipped on April 24, 2008 via FEDEX from Seah's headquarters in Florida to New York. (Levy, ¶¶13-14.) The watch was specifically sold and shipped to Ryan Francis, 279 W. 117th Street, Apt. 6H, New York, New York, 1026. *Id.* Seah's representatives later discovered on May 6, 2008, after receipt of a cease and desist letter addressed from Mr. Francis, bearing the business address and name of the law firm Kalow & Springut LLP, that Mr. Francis is an employee of Cartier's counsel's law firm. *Id.*, Exhibit B.

Absent the one sale to Cartier's counsel's employee, Seah has never sold or shipped any Seah Zodiac to New York. (Levy, ¶15). Seah did not initiate the transaction or unilaterally reach out to New York. (Levy, ¶13).

Seah has never transacted nor done business in New York. (Levy, ¶4). Seah has never solicited any of its products in New York, provided any services in New York, or owned, operated or had any affiliation with any stores or businesses anywhere in New York. *Id.* Seah has

never owned or leased any real property in New York, paid any taxes in New York, employed

any employees or agents in New York (beyond local counsel in this case), or been incorporated

or had any offices outside the State of Florida. *Id.*    Lastly, Seah has never performed or entered

into any contracts in New York, or maintained any bank accounts in New York. *Id.*

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE COMPLAINT DUE TO THE LACK OF PERSONAL JURISDICTION OVER DEFENDANT SEAH, LLC**

Plaintiff's Complaint contains virtually no allegations bearing on the issue of personal

jurisdiction over Seah.  All Cartier has done is to allege that Seah "is transacting and doing

business in this judicial district and is subject to the jurisdiction of this Court."  Defendant

interprets this bare allegation as being an attempt to plead general jurisdiction.  As demonstrated

by the facts above, this Court lacks general jurisdiction over Seah because one sale to the Plaintiff

in New York does not amount to systematic and continuous contact with the State of New York.

Alternatively, to the extent that Cartier or this Court views the above quoted language as pleading

specific personal jurisdiction, the sale to Plaintiff should be disqualified as an act falling within

CPLR §302(a).  Even if determined to be a qualifying act, Seah lacks sufficient minimum

contacts with New York to justify haling Seah into this Court to litigate whether it has committed

any act of trade dress infringement.

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2),

"the plaintiff bears the burden of demonstrating that the court has jurisdiction over the

defendant." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999) (quoting

*Metropolitan Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied,* 117

S.Ct. 508 (1996)).  The determination of personal jurisdiction is a two-part analysis. *Metropolitan

Life Ins.* 84 F.3d at 567.  Since jurisdiction in this case is based primarily on federal questions,

the Court is to first look at whether Plaintiffs are able to satisfy New York's long-arm statute and then it must determine whether there are sufficient minimum contacts to justify personal jurisdiction over Seah. *Id.* The due process analysis has two components. First, this Court must look at the defendant's contacts with New York to determine whether it has sufficient contacts to justify finding jurisdiction. *Id.* (*citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Second, the Court must ascertain whether it is reasonable to impose jurisdiction under the circumstances of the case. *Id.* at 568.

Plaintiffs are no strangers to personal jurisdiction challenges in this Court, especially under the exact circumstances present in this case. In a case which was ultimately decided on venue grounds, this Court was presented with well-reasoned personal jurisdiction analysis, in particular with regard to Plaintiffs' modus operandi of using its counsel's representatives to make a purchase from an out-of-state defendant for the purpose of manufacturing contact with an individual within this district. *See Cartier v. D&D Jewelry Imports*, 510 F.Supp.2d 344 (S.D.N.Y. 2007). In that case, Cartier, through an employee of the law firm Kalow & Springut, LLP, purchased the allegedly infringing product from the defendants' website which was shipped from California to New York. *Id.* at 345. In applying § 1404(a) and finding transfer of venue to California appropriate because there the Court found that the "minimal connection to this district was generated by Cartier itself." *Id.* at 347.

## A. The Court Lacks General Personal Jurisdiction Over Seah, LLC Under CPLR §301

In order to establish general personal jurisdiction, Cartier is required to show that Seah had systematic and continuous course of business with the State of New York. *Landoil Res v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 28 N.Y.S.2d 739, 741 (1990). The defendant must not occasionally or casually do business in New York; rather such business must be done

with a "fair measure of permanence and continuity." Seah's only contact with the State of New York is the delivery of its Seah Zodiac watch purchased by Cartier's representative through SkyMall. This single sale does not make for systematic or continuous contact with the State of New York. Assuming that the sale even qualifies as a contact with the forum state, which as argued below it should not, the sale to Cartier's representative is at most an occasional sale. Furthermore, the existence of advertisements on the SkyMall website and its magazine, and Seah's own website, do not constitute sufficient contact with New York to establish general jurisdiction because of the short time frame in which the Seah Zodiac has been marketed online. Thus, the Court should conclude there is no general jurisdiction.

### B. The Court Lacks Specific Personal Jurisdiction Over Seah, LLC Pursuant To CPLR §302

Having established that this Court lacks general jurisdiction over Seah, the next issue for consideration is whether there is specific personal jurisdiction over Seah. No such jurisdiction exists for the simple reason that there is no qualifying activity on which to base the initial long-arm statute analysis. This Court should rule that the sale to Cartier's representative is disqualified from consideration because it was an effort to manufacture jurisdiction in this Court as a matter of convenience for Cartier and its New York counsel. Cartier clearly knew the Florida location from which Seah was conducting business or could be said to have acted.

### 1. The Court Lacks Jurisdiction Over Seah, LLC Pursuant to CPLR 302(a)(1)

Pursuant to CPLR §302(a)(1), Cartier must establish that the causes of actions alleged arise from Seah transacting business in New York or contracting to supply goods in New York. Even though controlling law permits the assertion of personal jurisdiction in the context of a single transaction where the defendant never enters New York, there is a requirement of a

substantial relationship between a subject transaction and the causes of action alleged to satisfy

the nexus requirement. *Johnson v. Ward*, 4 N.Y.3d 516, 519, 797 N.Y.S.2d 33 (2005). In *Philip*

*Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412 at *4 (S.D.N.Y. 2007) (slip copy), the Court

held:

> New York's C.P.L.R. Section 302(a)(1) confers jurisdiction over a
> non-domiciliary corporation that 'transacts business within the
> state," if there is a "direct relationship between the cause of action
> and the in state conduct.' *Fort Knox Music, Inc. v. Baptiste*, 203
> F.3d 193, 196 (2d Cir.2000). '[T]ransacting business requires only
> a minimal quantity of activity, provided that it is of the right nature
> and quality.' *Agency Rent A Car Sys., Inc. v. Grand Rent A Car
> Corp.*, 98 F.3d 25, 29 (2d Cir.1996). A single transaction may
> suffice for personal jurisdiction under Section 302(a)(1), and
> physical presence by the defendant in the forum state during the
> activity is not necessary. *Bank Brussels Lambert v. Fiddler
> Gonzalez & Rodriguez*, 171 F.3d, 779 787 (2d Cir.1999). Although
> New York is a 'single-contact' state, '[a]n essential criterion in all
> cases is whether the quality and nature' of the defendant's activity is
> such that it is reasonable and fair to require him to conduct his
> defense in [New York].' *Riblet Products Corp. v. Nagy*, 191
> A.D.2d 626, 627 (N.Y.App. Div.2d Dep't 1993). Thus, where there
> is at least a single sale into New York, courts will look to the nature
> and quality of the contact.

Examining the nature and quality of the contact at issue in the case at bar, this Court should

conclude the long-arm statute prong of the test is not satisfied. This is particularly true because

Seah's only sale to someone in New York is the result of Cartier's agent's purchase at the

direction of Cartier's counsel.

   A review of cases decided by various divisions of this Court reveals a lack of unanimity

with regard to whether a sale of an alleged infringing product to a plaintiff's agent may qualify as

an act for long-arm analysis. However, a number of persuasive decisions include holdings that

such purchases do not qualify. Seah respectfully requests that Honorable Judge Kaplan align

himself with other judges of this Court who have decided to eliminate a manufactured sale from

consideration as a contact with the forum.[3]  Of particular note from the cases declining to find

jurisdiction is the rationale that the plaintiff's agent's purchase has nothing to do with the alleged

infringing activity since the plaintiff's agent cannot claim to have been confused as to with whom

the agent was dealing.  *Mattel, Inc. v. Anderson*, No. 04 Civ. 5275RCC, 2005 WL 1690528

(S.D.N.Y. 2005) (unreported decision citing to reported decisions from this Court in action

against an out-of-state defendant for trademark infringement and dilution).  The same is true in

the case at bar because Cartier was investigating a competitor's product prior to first sending a

cease and desist letter and later to sue for trade dress infringement, well knowing the actual

source of the Seah Zodiac. Cartier cannot allege deception to the consuming New York public.

Even assuming that the sale to Cartier counts for evaluating the transaction of business

test for specific jurisdiction under §302(a)(1), the Court is to evaluate the totality of

circumstances in making its ultimate determination. *Sunward Electronics, Inc. v. McDonald*, 362

F.3d 17, 22-23 (2d Cir. 2004).  A factor commonly considered is whether there is an ongoing

contractual relationship with a New York corporation.  *Id.*  No such relationship exists here.  At

the time Cartier brought this lawsuit, a single contractual relationship existed by virtue of the sale

---

[3]A number of other federal courts have reached similar well reasoned conclusions.  *See Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d (D. Ore. 1999) (noting the unfairness of forcing a defendant thousands of miles away to defend in a forum with not contacts but for the plaintiff's efforts to create contact with the jurisdiction). In *Millenium*, the court noted that there must be contacts with the forum created by the defendant.  Cartier's quick actions in filing in New York federal court means that as of the time of the filing of the complaint no such actions had occurred.  *See IO Group, Inc. v. Pivotal, Inc.*, No C 03-5286 (MHP), 2004 WL 838164 (N.D. Cal. April 19, 2004); *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631 (N.D. Ill. March 19, 2002); *Figi Graphic, Inc. v. Dollar General Corp.*, 33 F. Supp 2d 1263 (S.D. Cal. 1998); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104 (D. Conn. 1998); *American Allsafe Co. v. Scott Young Research, Inc.*, No. Civ. A.3:96-CV-0977P, 1992 WL 587483 (N.D. Tex. Sept. 15, 1997).

and delivery of a single watch, which is not an ongoing relationship. It is not as though there is a distributor of Seah watches in New York. There were no contract negotiations in New York, nor were there any meetings in New York in furtherance of any contractual relationship. *Id.*

### 2. The Court Lacks Jurisdiction Over Seah, LLC Pursuant to CPLR §§302(a)(2) and 302(a)(3) Because Seah, LLC's One Sale to Plaintiffs' Counsel's Employee Was Not A Tortious Act That Caused Any Injury to Plaintiffs

Assuming that Cartier intends its brief statement regarding personal jurisdiction to include CPLR §302(a)(2), Cartier is barred as a matter of law from relying on that portion of New York's long-arm statute because the provision only reaches tortious acts which are committed when a defendant is physically present in New York. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *Digital Lab Solutions, LLC v. Stickler*, No. 06 Civ. 6482(LLS), 2007 WL 700821 at *4 (S.D.N.Y. March 7, 2007). Also, the only possible tortious act would be the sale to Cartier's investigator, which should not be considered for the reasons explained above. *See Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) (holding trademark infringement to occur when the deceived customer buys the defendant's product believing it is the plaintiff's, which cannot be the case with regard to Cartier's investigator).

CPLR §302(a)(3) provides for jurisdiction against a defendant who commits a tortious act outside New York causing injury to person or property within the state, if the defendant (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. *Digital Lab Solutions,* 2007 WL 700821 at *4. Based on the facts presented above, Seah's conduct does not amount to that prescribed in §302(a)(3)(i).

To exercise jurisdiction under §302(a)(3)(ii), four factors must be met: (1) the non-domiciliary commits a tort outside of New York; (2) there is injury to the plaintiff in New York; (3) the non-domiciliary should reasonably have foreseen consequences in New York; and (4) the non-domiciliary derives substantial revenue from interstate or international commerce. *Id.* The facts detailed above further support the conclusion that Seah's conduct does not meet these factors. To begin with the tortious activity could only have occurred elsewhere in the United States if the sale to the investigator is not considered. As a fledgling enterprise, Seah does not satisfy the other factors.

### 3. Seah, LLC Lacks the Required Minimum Contacts to Satisfy Due Process.

Assuming that the Court were to find that an aspect of §302(a) was satisfied, the Court must apply the following standards in *Pearson Education, Inc. v. Shi*, 525 F.Supp.2d 551, 557 (S.D.N.Y. 2007), when considering whether Seah has the requisite minimum contacts with New York:

> In addition to demonstrating jurisdiction under New York law, Plaintiffs must also show that the exercise of jurisdiction comports with federal due process standards. *See Bank Brussels*, 305 F.3d at 127. "The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-domiciliary with whom it has certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (citations and internal quotation marks omitted).
>
> Minimum contacts exist where the defendant "purposefully availed itself" of the privilege of doing business in the forum state and could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," the Court considers whether extending jurisdiction "is reasonable under the circumstances of the particular case." *Metropolitan*, 84 F.3d at 560, 567 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, (1945)). For this inquiry, the Court considers "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Id. (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Given the paucity of contact with New York, and that its central and meaningful contacts are with Florida, the burden on Seah to litigate in New York is high.  Evidence of one sale in New York to Cartier's investigative agent does not give this Court a large interest in policing alleged trade dress infringement as to New York consumers.  At this point, there is no alleged act of infringement with ties to New York other than that one sale.  Contact that is manufactured by Cartier's investigation of Seah is even more relevant to the minimum contacts analysis than the long-arm issues addressed above.

Cartier's interest in a convenient forum is outweighed by the other factors for consideration.  Surely the Southern District of Florida is a federal district court with great experience handling trade dress matters.  Assuming that there were any infringing activity, the Southern District of Florida would have a certain interest in addressing matters pertaining to Broward County, Florida based Florida limited liability company.  The Southern District of Florida is equally interested in promoting the efficient resolution of matters such as this case.

Cartier certainly has the financial abilities to litigate in Florida as compared to Seah which is a company that just started marketing and selling its watches in April 2008 and has only sold a small number of its small inventory.  Having Seah defend this action in the Southern District of New York is offensive to traditional notions of fair play and substantial justice.  With one sale, it can hardly be said that Seah purposely availed itself of the privilege of doing business in New York or that Seah could reasonably expected to be haled into this district based on the single sale.

## II.     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE VENUE IS IMPROPER

In trademark and unfair competition cases, venue is governed by 28 U.S.C. § 1391(b), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 182 (S.D.N.Y. 1995). In the case at bar, neither Defendant maintains an office or principal place of business in New York. Furthermore, Seah and SkyMall can be found in Florida and Arizona federal districts respectively. Hence, subsection (2) is the only applicable statutory provision that could give rise to venue in this district.

Venue is improper in New York since "a substantial part of the events" giving rise to the claim did not occur in this district. When determining what constitutes a "substantial part of events" giving rise to an infringement claim, courts have "held explicitly that 'if a defendant targets the District by advertising and actively pursues efforts to market the product by making sales presentations and selling even a relatively nominal amount of products in the District, such actions may be regarded as constituting a substantial part of events giving rise to the claim.'" *Pilates*, 891 F. Supp. at 182 (*quoting French Transit v. Modern Coupon Sys.*, 858 F.Supp.22, 32 (S.D.N.Y. 1994) (holding venue is improper in this district over Arizona defendant who sold products nationally but did not direct any advertising or promotion at the district in particular)). This Court recognized that *Pilates* "demonstrates that venue is properly laid when a defendant actively targets a district while engaging in allegedly injurious behavior." *Albert v. Apex Fitness,*

*Inc.*, No. 97 CIV. 1151(LAK), 1997 WL 323899 (S.D.N.Y. June 13, 1997). Foremost, the Complaint is devoid of any facts suggesting that any of the events giving rise to the claim occurred in this district, or that Seah targeted this district while engaging in injurious behavior. Instead, Plaintiffs merely allege in conclusory fashion that Seah "is transacting and doing business in this judicial district and is subject to the jurisdiction of this Court." (Complaint, ¶¶3-4). What Plaintiffs fail to allege is that the *only* event that occurred in this district concerning its claims was Plaintiffs' staged purchase of the Seah's allegedly infringing Seah Zodiac watch. Therefore, there cannot be injurious behavior manufactured by Plaintiffs themselves. Absent Seah's one sale of its product to Plaintiffs' counsel's employee, Seah has never sold or shipped any of the allegedly infringing watches to New York, and Seah never targeted the district. Plaintiffs' own purchase of the purportedly infringing product is insufficient and cannot be said to constitute a "substantial part of the events" that gives rise to the subject infringement claim. Because there are no facts or allegations that suggest that Seah targeted New York through advertising, marketing, solicitation or by making sales, the requirements of § 1391(b) are not satisfied. Accordingly, the Complaint should be dismissed for improper venue.

### III.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404(a)

Even when assuming arguendo that jurisdiction and venue are proper in this judicial district, the Court should transfer the action to the Southern District of Florida pursuant to 28 U.S.C. 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of 28 U.S.C. § 1404(a) is "to prevent 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 656 (S.D.N.Y.

20

1998). Fundamentally, section 1404(a) was created to supply a means to transfer a case properly in one federal court to another in which it might more conveniently be resolved. *Schechter v. Tauck Tours, Inc.*, 17 F.Supp.2d 255, 258 (S.D.N.Y. 1998).

It is well established that district courts have broad discretion in making determinations of convenience under section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989); *Red Bull Associates v. Best Western Intern., Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (*quoting Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see also Nieves v. American Airlines*, 700 F.Supp.769, 772 (S.D.N.Y. 1988).

When presented with a motion to transfer venue, the Court must first inquire as to whether the action is one that might have been brought in the proposed transferee district, and if so, whether the transfer is appropriate after considering the convenience and interest of justice factors. *Totilo v. Herbert*, No. 07 Civ. 10991 (LAK), 2008 WL 613148 (S.D.N.Y. March 5, 2008); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 56 (S.D.N.Y. 2001). "[I]n trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred." *Pilates*, 891 F.Supp. at 182 (*citing Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294-295 (3d Cir.1994)).

### A. Plaintiffs Might Have Brought This Action in the Southern District of Florida.

There can be no dispute that this action might have been brought in the Southern District of Florida. Seah is undeniably the primary target concerning the purported infringing activities that give rise to the claims asserted in the Complaint. Florida-based Seah is alleged to have manufactured, offered for sale, and sold "imitations" of Cartier's watches that infringe the Pasha De Cartier trade dress. SkyMall's involvement is to publish an advertisement for the Seah

Zodiac in its magazine and on its website, take an order from a customer, and forward payment to Seah in Florida. Arizona-based SkyMall does not ship the product to any Seah watch customer. Shipment of the product comes directly from Seah which is located in the Southern District of Florida. The only connections to the State of New York is Plaintiffs' location of its executive offices and the one New York order made by Plaintiffs' agent who is employed by Plaintiffs' counsel's law firm. Seah sent the single watch to Cartier's agent from Florida.

All of the conduct which forms the basis for the allegations in Cartier's Complaint emanated from Florida, which is where: (a) Seah developed its Zodiac watches, (b) Seah's distribution strategy was forged, (c) the product is shipped from, (d) Seah's records are located, and (e) Seah operates its website. Accordingly, this action may have been brought in the proposed transferee district, the Southern District of Florida. Because Seah has satisfied its initial burden to establish a proper transferee forum under § 1404(a), the Court must consider balancing the factors pertaining to the convenience of the parties and witnesses and the interests of justice.

### B. The Factors Strongly Favor Transfer to Florida under Section 1404(a).

When determining whether transferring venue to an available forum is appropriate, the following factors should be considered: (1) the convenience to the parties, (2) the convenience to the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (7) the interests of justice." *Totilo v. Herbert*, No. 07 Civ. 10991 (LAK), 2008 WL 613148 (S.D.N.Y. March 5, 2008) (*quoting Schechter*, 17 F.Supp.2d at 260); *see also Cartier v. D&D Jewelry Imports*, 510 F.Supp.2d at 346 (considering other factors such as plaintiff's choice of

22

forum, locus of operative facts, district's familiarity with the governing law, and the means of the parties).

This very same Court has already addressed these very same issues in *Cartier v. D&D Jewelry Imports*, 510 F.Supp.2d 344 (S.D.N.Y. 2007). In *Cartier v. D&D Jewelry*, the Court recently transferred Cartier's trade dress infringement action to California based on the convenience of the parties and witnesses and interest of justice. There, like this case, Cartier's employee from the law firm Kalow & Springut, LLP purchased the allegedly infringing product at issue via the internet from the defendants' small company that was based out of California. *Id.* at 345. The item was later shipped by the defendant to New York. *Id.* As in the case at bar, Cartier, whom was found to better afford the litigation, chose to file the action in the Southern District of New York where its executive offices were located. *Id.* at 346. However, the Court gave plaintiff's choice of forum little deference, if any, since Cartier generated the only contact by the defendants with New York. *Id.* While exercising its broad discretion in evaluating convenience and whether transfer is in the interest of just, this Court concluded that transfer to defendants' state was appropriate because many of the "non-exclusive" list of factors considered weighed heavily in favor of transfer. *Id.* at 347. These included factors such as the convenience and means of the parties, plaintiff's choice of forum, and locus of operative facts. *Id.* at 346-347.

Accordingly, in light of the circumstances in this case, there is no reason in this instance to diverge from this Court's recent holding.

### 1. Plaintiffs' Choice of a New York Forum is Entitled to Extremely Little or No Weight.

Cartier's choice of forum should be entitled to "considerably less deference where the minimal connection to this district was generated by Cartier itself." *See e.g., Cartier v. D&D Jewelry Imports*, 510 F.Supp.2d at 347 (holding transfer was warranted where paralegal of

23

Cartier purchased the allegedly infringing product from defendant's website that was shipped to New York). In *Cartier v. D&D Jewelry*, the Court noted:

> A plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. ... "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."... However, the "weight accorded to a plaintiff's choice of venue is significantly diminished ... where the operative facts have no connection to the chosen district."

510 F.Supp.2d at 347 (citations omitted). It is well-established that "where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiffs' chosen forum, then the plaintiffs' choice is not accorded the same 'great weight' and, in fact, is given reduced significance." *Frasca v. Yaw*, 787 F. Supp. 327, 332 (E.D.N.Y. 1992); *see also Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997). Like *Cartier v. D&D Jewelry*, this same Court should give Cartier's choice of venue less deference, if any, because, but for Plaintiffs' one purchase of the Seah Zodiac watch, the operative facts here have absolutely no connection to this district.

### 2. The Convenience of the Parties, Convenience of the Witnesses, Relative Ease of Access to Sources of Proof, and Interest of Justice All Weigh Heavily in Favor of Transfer.

Conducting this litigation in the district where Seah is headquartered would be more convenient for Seah, whose conduct in developing and selling the alleged infringing product centrally at issue in this litigation. Cartier, a Delaware corporation, with its executive offices in this district, can certainly more readily afford the cost of this litigation and travel to Florida. In fact, counsel for Cartier has expressed to Seah's Florida counsel that he is handling another matter in Florida and will be traveling there to take the deposition of Seah's representatives in connection with the expedited discovery order. On the other hand, Seah is a small closely held

company with its principal and sole place of business in Broward County, Florida. SkyMall's principal offices are located in Phoenix, Arizona. Seah is contractually obligated to defend and indemnify SkyMall for the claims asserted by Cartier in this litigation. Any liability on the part of SkyMall will be based solely on the actions or omissions of Seah. Therefore, Seah's witnesses will mainly consist of its two employees that reside in Broward County, Florida, its website designer and printer Bob Tonda of CorporateGrafix in Coral Gables, Florida, and may include certain account representatives from SkyMall. (Levy, ¶5).

In addition to calling its own witnesses, Cartier potentially would have to call Seah's employees and SkyMall's employees. Requiring that Seah provide travel and accommodations for all its employees and witnesses (and SkyMall's) in New York would be unfair and will prejudice Seah. (Levy, ¶¶17-18). Especially when considering the cost of hotels in New York, New York, versus those located in Broward County, Florida.

The convenience of the witnesses is a "powerful factor governing the decision to transfer a case." *Royal Ins. Co. v. United States*, 998 F. Supp. 351, 354 (S.D.N.Y. 1998); *see also Berman v. Informix Corp.*, 30 F. Supp. 2d at 657; *Dan-Dee Int'l, Ltd v. Kmart Corp.*, No. 99 Civ. 11689 (DC), 2000 WL 1346865 (S.D.N.Y. September 19, 2000) (holding the convenience of the parties and witnesses are the most important factors in deciding whether to transfer venue). The cost of travel to New York and lost work days for Seah employees and witnesses and employees testifying at trial would be significant. Conversely, Cartier's counsel would have to travel to Florida and Arizona to depose these witnesses even if the case is not transferred. Seah does not have the resources to litigate in New York, approximately 1200 miles away. (Levy, ¶¶17-18). Therefore it would be considerably more convenient for Seah to litigate in the Southern District of Florida.

Seah developed its Seah Zodiac watch in Florida and operates its business and its website in Florida. Furthermore, a majority of the documents and evidence would most likely come from Seah, not Cartier, and certainly not SkyMall. The Southern District of Florida would have readier access to sources of proof than would this Court, which is where the alleged infringing activities occurred. As a result, when considering the totality of the circumstances and in the interest of justice, transfer to the Southern District of Florida is warranted and necessary.

### 3. The Remaining Factors Also Weigh in Favor of Transfer to the Southern District of Florida.

Consideration of the remaining factors - availability of process to compel the attendance of unwilling witnesses, cost of obtaining willing witnesses, and practical problems indicating where the case can be tried more expeditiously and inexpensively —weigh in favor of a transfer to the Southern District of Florida. First, Seah is unaware of any unwilling witnesses at this time. However, it is quite possible that Seah's non-party witnesses located in Hawaii and Florida that were intimately involved in the design and development of the Seah Zodiac watch may not volunteer to travel to New York. Mr. Tonda, Seah's website designer and printer which might be relevant to the development of Seah's Zodiac and its marketing, is located in Coral Gable, Florida, within the subpoena power of the Southern District of Florida.

Neither of the federal districts at issue can compel attendance of non-party witnesses outside each respective state. Therefore, this factor weighs strongly in favor of transfer. With regard to cost of obtaining willing witnesses, Seah is unaware of any willing witnesses located in New York. Lastly, all of the practical problems that attend the handling of litigation would be considerably reduced by litigation in Florida, where the events occurred and where Seah's pertinent documentation, evidence and a majority of the witnesses are located. As a result, the remaining factors weigh in favor of transfer to Florida.

## CONCLUSION

For all of the foregoing reasons, Defendant, Seah, LLC, respectfully requests that this Court dismiss the Complaint for lack of personal jurisdiction and improper venue.    In the alternative, Defendant requests that the Court transfer venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), and grant any such other relief as the Court may deem just and proper.

Respectfully submitted,

**WELTMAN & MOSKOWITZ, LLP**
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

By: _____
Richard E. Weltman (RW3169)
270 Madison Avenue Suite 1400
New York, New York 10016
212.684.7800

Dated:  June 5, 2008

27

Richard E. Weltman (RW3169)
WELTMAN & MOSKOWITZ, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016
212.684.7800
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

-and-

David L. Ferguson (DF8500)
Jonathan M. Streisfeld (JS5750)
THE KOPELOWITZ OSTROW FIRM, P.A.
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
954.525.4100
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

|  |  |
|---|---|
| CARTIER, division of RICHEMONT NORTH AMERICA, INC.; and CARTIER INTERNTAIONAL, N.V., | : : : |
|  | Civil Action No. 08-CV-4471(LAK) |
| Plaintiffs, | : |
| -against- | : |
| SEAH LLC; SKYMALL, INC.; and JOHN DOES 1-10, | : : |
| Defendants. | : : |

--------------------------------------------------------------------x

## NOTICE OF JOINDER BY DEFENDANT SKYMALL, INC. IN DEFENDANT SEAH, LLC'S MOTION TO DISMISS AND TO TRANSFER VENUE

Defendant, SkyMall, Inc., by and through its undersigned counsel, hereby joins in the motion to dismiss and to transfer of Defendant Seah, LLC, and adopts the facts presented and legal arguments advanced by Defendant Seah, LLC in its contemporaneously filed motion and incorporated memorandum of law, except as to the personal jurisdiction issue.

In an abundance of caution, to the extent that this Court determines Defendant SkyMall, Inc. does not have grounds to contest venue, or to request a transfer of the case to the Southern

District of Florida, SkyMall, Inc. hereby requests an enlargement of time to serve its answer to the Summons and Complaint and affirmative defenses. In such case, this Court should order that an answer and affirmative defenses be served within ten (10) days of the ruling on the venue issues presented by Defendants.

Respectfully submitted,

**WELTMAN & MOSKOWITZ, LLP**
*Attorneys for Defendants Seah, LLC and SkyMall, Inc.*

By:_____
      Richard E. Weltman (RW3169)
      270 Madison Avenue Suite 1400
      New York, New York 10016
      212.684.7800

Dated June 5, 2008

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Joinder was served via U.S. Mail and CM/ECF filing on June 5, 2008, to: Tal S. Benschar, Esq. and Milton Springut, Esq., Kalow & Springut, LLP, 488 Madison Avenue, New York, New York 10022.

_____
      Richard E. Weltman (RW3169)